**Peter ROMAN, et al. Plaintiffs,**

v.

**NEW YORK STATE UNITED TEACHERS, Defendant.**

**No. 86 Civ. 3016 (EW).**

United States District Court, S.D. New York.

March 13, 1987.

Davis & Eisenberg, New York City, for plaintiffs; Herbert Eisenberg, of counsel.

James R. Sander, New York State United Teachers, New York City, for defendant; Noel D. Cohen, of counsel.

OPINION

EDWARD WEINFELD, District Judge.

This action has its origin in a *New York Times* advertisement, sponsored by the Friends of Democracy in Central America, which urged support of the "contras" in Nicaragua.[1] The advertisement was signed by sixty-nine well-known individuals engaged in a wide variety of occupations,

---

1. The following statement of facts assumes the truth of plaintiffs' complaint, statements in exhibits thereto, and the *New York Times* advertisement, which is incorporated in the complaint by reference.

including Albert Shanker, who was identified as "President, American Federation of Teachers, AFL–CIO." An asterisk indicated that the "organizational affiliations" which appeared below the name of each signatory were for identification only.

The plaintiffs are NYSUT Members Against Intervention in Central America and 36 individual members of that organization. Because plaintiffs disagreed with the view expressed in the *New York Times* advertisement, they sought to place an opposing advertisement in the *New York Teacher,* the official newspaper of defendant New York State Union of Teachers (NYSUT). The proposed advertisement, signed by over 400 NYSUT members, made reference to the *New York Times* advertisement signed by Shanker and called for NYSUT to support nonintervention in Nicaragua.

The editor-in-chief of the *New York Teacher* refused to publish the proffered advertisement on the ground that the union had a policy of refusing to publish any political advertisements or advertisements from membership organizations. He specifically stated that the advertisement was refused because "1. It is a political advertisement, 2. It is an advertisement submitted by a membership organization." In rejecting the advertisement, he reiterated an offer he previously made to publish the advertisement, free of cost, as a letter to the editor on the condition that only one name appear, coupled with a statement of the number of other signatories.

In January 1986, a local union of NYSUT submitted a resolution to the NYSUT Representative Assembly calling for the establishment of a committee to review the editorial policy of the *New York Teacher* on paid advertisements. The resolution was rejected by the Assembly. Plaintiffs then brought the instant suit against NYSUT to compel publication of their advertisement. Defendant has moved to dismiss plaintiffs' claim under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, and plaintiffs have moved for summary judgment.

Plaintiffs predicate their right to relief upon section 101(a)(2) of Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), which provides:

FREEDOM OF SPEECH AND ASSEMBLY.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

The statute was construed by the Supreme Court in *United Steelworkers of America v. Sadlowski.*[2] In its analysis of the statute, the Court reasoned that:

[W]e first consider whether the rule interferes with an interest protected by the first part of § 101(a)(2). If it does, we then determine whether the rule is "reasonable" and thus sheltered by the proviso to § 101(a)(2). In conducting these inquiries, we find guidance in the policies that underlie the LMRDA in general and Title I in particular. First Amendment principles may be helpful, although they are not controlling....

The critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution.[3]

The Court held that although a union rule against non-members contributing to campaigns for union offices limited the ability

**2.** 457 U.S. 102, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982).

**3.** *Id.* at 111–12, 102 S.Ct. at 2345–46.

of union insurgents to wage an effective campaign against entrenched office holders, it was valid because it was "rationally related to the union's legitimate interest in reducing outsider interference in union affairs."[4]

In essence, plaintiffs' complaint challenges the editorial policy that required rejection of their advertisement on the ground that it violated their right of freedom of speech under the statute. For several reasons, plaintiffs' complaint fails to state a cause of action upon which relief may be granted.

First, plaintiffs have failed to allege any interference with speech that is protected by the first part of § 101(a)(2). The subject of plaintiffs' advertisement has no relationship to any interest of the union or its members, but rather concerns an issue of international politics. Moreover, plaintiffs have not alleged that NYSUT has adopted or taken any position or issued any statement on the subject of United States intervention in Nicaragua which might make this into a subject of union concern. The fact that Albert Shanker signed an advertisement in the *New York Times* as a private individual does not trigger any right to reply on the part of the plaintiffs under § 101(a)(2).

Moreover, even if one were to assume arguendo that the *New York Times* advertisement expressed political views attributable to the union, thus bringing into play the protections of § 101(a)(2), plaintiffs would still have to allege an unreasonable interference with their right to communicate with other union members. As noted in *Sadlowski*, "the critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." The mere allegation that the union newspaper has a policy of rejecting political advertisements and has rejected plaintiffs' advertisement does not in itself suffice to state such a claim.

Defendant's policy is specifically directed at issues of politics, which ofttimes sharply divide union memberships with a resulting diminution of the union's power. The policy avoids sharp political controversy which may weaken the power of the union to advance its essential purpose of protecting the economic interests of the union's members and to achieve broader objectives, such as improvements in education and raising the standards of qualifications for those who aspire to enter the teaching profession. The editorial policy reduces the prospect of divisive elements within the union based on sharply held views that may impair the effectiveness of its leadership in seeking to promote the basic interests of the union before national and state legislative bodies.

The inadequacy of plaintiffs' allegation is underscored by the ruling in *Sheldon v. O'Callaghan*,[5] in which our Court of Appeals stated that:

> The duly elected officers of a union have a right and a responsibility to lead, and to give the members the benefit of their advice on questions that arise. They have a right to use the union publications to express their views, and are not ordinarily required to give space therein to the expression of contrary views, provided they do not interfere improperly with whatever rights members may have to communicate their views to other members.[6]

Under *Sheldon*, then, even if it were true that the union in the instant case has taken a position and denied plaintiffs access to the union newspaper, this allegation without more would not suffice to state a cause of action.

Indeed, based upon plaintiffs' complaint, it cannot even be said that defendant denied plaintiffs space in which to express their views. Defendant's policy was not only reasonable, but extremely fair in that the editor of the *New York Teacher* of-

---

**4.** *Id.* at 112, 102 S.Ct. at 2346.

**5.** 497 F.2d 1276 (2d Cir.), *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974).

**6.** *Id.* at 1282.

fered to publish plaintiffs' advertisement free of cost as a letter to the editor, with the name of one of the plaintiffs and noting the number of other signatories. Plaintiffs arbitrarily rejected this offer, which certainly would have sufficed to communicate their message to other union members.

Taking all of the allegations of the complaint as true, plaintiffs have failed to state a claim of interference with speech protected by § 101(a)(2) or that defendant's alleged partial interference with that speech was unreasonable. Defendant's motion to dismiss the complaint under Rule 12(b)(6) for failure to state a claim is granted; plaintiffs' motion for summary judgment is dismissed as moot.

So ordered.